Cheryl D. LYONS, Plaintiff,

v.

The CITY OF XENIA, OHIO, et al., Defendants.

No. C–3–99–603.

United States District Court, S.D. Ohio, Western Division.

Jan. 22, 2003.

Michael C Thompson, Dayton, OH, for plaintiff.

Lynnette Pisone Ballato Law Office of Nicholas E Subashi, Dayton, OH, for defendant.

EXPANDED OPINION; DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. # 27); CONFERENCE CALL SET

RICE, Chief Judge.

Pursuant to 42 U.S.C. § 1983 and state law, Plaintiff Cheryl D. Lyons ("Lyons") filed a Complaint (Doc. # 1) against Defendants City of Xenia (Ohio), Police Chief Eric Prindle ("Chief Prindle"), Officer Christine Keith ("Officer Keith"), and Officer Matthew Foubert ("Officer Foubert"), alleging that Defendants violated rights guaranteed to her under the Fourth and Fourteenth Amendments to the United States Constitution. Lyons alleged in her

Complaint that Officers Keith and Foubert, without probable cause and with the use of excessive force, falsely arrested her on charges of assault, resisting arrest, and obstructing official business. Defendants deny the allegations. Pending before the Court is Defendants' Motion for Summary Judgment (Doc. # 27).

## I. *Factual Background* [1]

On August 18, 1998, Officer Keith was investigating a juvenile assault involving Aiesha Ward, one of two alleged perpetrators.[2] Aiesha is the daughter of Cheryl Lyons, and was sixteen years old at the time of the events in question. Pursuant to her investigation, Officer Keith went to the home of Aeisha's friend, Sara Dodds, the other alleged perpetrator. (Ward Depo. at 45.) When Officer Keith arrived at the Dodds residence, Aiesha was present. (*Id.*) After speaking with Sara and her mother, Officer Keith told Aiesha that she wished to speak with her mother as well, and that she would follow Aiesha to her home. (*Id.* at 49–50.)

When Aiesha arrived at her home, she intended to enter her house alone, to give her mother a warning as to why a police officer was at her home. (*Id.* at 57.) However, after she opened the front door, Officer Keith followed her inside without first having asked permission (although Aiesha admitted that an invitation to step inside behind her could reasonably have been inferred by Officer Keith). (*Id.* at 58–59.) Once inside, Lyons was "shocked" to find a police officer standing in her home. (Lyons Depo. at 183.) Lyons asserts that Officer Keith appeared "mad at the world" at that time. (*Id.*) Officer Keith asked for additional background information on Aiesha, such as her telephone number, but Lyons told her to "wait a minute," refusing to allow Aiesha to answer Officer Keith's questions until Lyons herself was made more aware of the officer's purpose. (*Id.* at 185.) Officer Keith informed Lyons that she could either answer the questions or Aiesha could be taken "downtown," at which point Lyons told Officer Keith to leave her house. (*Id.* at 186.) Officer Keith told Lyons that she would not leave without the information on Aiesha, at which point Lyons responded by telling the officer to take a seat because she (Lyons) had no intention of answering any questions until she had a chance to take her blood pressure medicine. (*Id.*)

Officer Keith followed Lyons into the kitchen where Lyons had gone to take her medicine. (*Id.* at 186–87.) While Lyons attempted to take her medication, Officer Keith continued to solicit certain information about Aiesha. (*Id.* at 187.) Officer Keith's persistence upset Lyons, who started "cursing" at Officer Keith, asking her "who do you think you are" for acting in such a way in somebody's home. (*Id.*) In the face of Lyons' defiant temperment, Officer Keith, standing about three feet from Lyons, "started tightening her fist" and took a step toward Lyons so that she was standing about two feet from her, insisting again that Lyons provide her with the information she sought. (*Id.* at 188–89.)

1. For purposes of ruling on the Defendants' Motion for Summary Judgment, the Court will construe the facts, and all reasonable inferences drawn therefrom, in a light most favorable to Plaintiff, who is the non-moving party.

2. In their Motion, Defendants cite to the affidavit of Lieutenant Donald R. Persons to establish the facts of the police investigation. (Doc. # 27 at Ex. D.) However, the particular page containing the information on the nature of the investigation is not in the record. Nevertheless, Plaintiff does not dispute that the Xenia Police were investigating an assault, and the Court accepts this background fact as true.

Lyons felt as if she were being "badgered" by Officer Keith, and felt that Officer Keith's actions of taking a step toward her and balling her hand into a fist were "aggressive" and "out of control." (*Id.* at 188.) After Officer Keith took her step toward Lyons and insisted on collecting the background information, Lyons told Officer Keith that she was "not scared" of her, but that she was "not stupid" and knew that she could not hit a police officer. (*Id.* at 189.) Then Lyons raised her right index finger, pointed it at Officer Keith, and said "dammit, didn't you hear what I just said." (*Id.*)

When Lyons pointed her finger at Officer Keith, that officer commented to Lyons that one should never point a finger at an officer, and then attempted to grab Lyons' left wrist. (*Id.*) Lyons pulled back her wrist and walked from her kitchen into her dining room. (*Id.* at 190.) Lyons asserts that at the time Officer Keith grabbed her wrist it hurt (*id.* at 191), but that it did not cause a lasting pain. (*Id.* at 191–92.) When Lyons went into the dining room, Officer Keith radioed for backup. (*Id.* at 192.) Shortly thereafter, Officer Foubert, came "charging" into Lyons' house and "tackled" Lyons to the ground. (*Id.*) Lyons asserts that with Officer Foubert on top of her, she "couldn't breathe." (*Id.*) Officer Foubert then applied handcuffs to Lyons, tightening them "as tight as he could" (*id.*), after which the officers picked Lyons up off the ground and took her outside, frisked her, and "shoved" her into a police cruiser. (*Id.* at 192–93.) Ultimately, Lyons was charged under the Xenia General Offenses Code with misdemeanor assault, resisting arrest, and obstructing official business. (Supp. Police Report of Officer Keith, attached to Pl.'s Memo. in Opp. (Doc. # 36).) Subsequently, a jury found Lyons not guilty on all charges.

In Count One of her Complaint, Lyons avers that she was arrested without probable cause and with the use of excessive force, in violation of her Fourth Amendment rights, and that she was deprived of her liberty, in violation of her rights under the Fourteenth Amendment. In Count Two, Lyons raises state law causes of action of assault, intentional infliction of emotional distress, false arrest and imprisonment, excessive force, and malicious prosecution. In Count Three, Lyons asserts a supervisory liability cause of action against Chief Prindle. Finally, in Count Four, Lyons asserts a municipal liability cause of action against the City of Xenia. In her Prayer for Relief, she seeks both compensatory and punitive damages.

Even though, for purposes of summary judgment, the Court construes all genuine issues of material fact, and any reasonable inferences drawn therefrom, in a light most favorable to Lyons, the Court notes that, for their part, Officers Keith and Foubert deny that they used excessive force under the circumstances. They contend that Officer Keith believed Lyons' act of pointing her finger at her, coupled with Lyons' verbal abuse, rose to the level of assault. In his deposition, Officer Foubert stated that he detected a distressed tone in Officer Keith's call for support (Fouber Depo. at 12), and Defendants argue that he used no more force than appropriate to subdue Lyons when he arrived on the scene. Furthermore, Defendants' expert on police conduct, Samual D. Faulkner, argues that had Officer Foubert actually used the amount of force that Lyons claims he used, Lyons would have suffered more serious injuries than she did in fact suffer. (Doc. # 27 at Ex. F.)

II. *Standards Governing Motions for Summary Judgment*

Summary judgment must be entered "against a party who fails to make a show-

ing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law, Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,[3] show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved

---

**3.** Herein, Lyons attached a purported affidavit to her Memorandum that is neither signed nor sworn. Because Fed.R.Civ.P. 56(e) requires that affidavits set forth facts "as would be admissible in evidence," and because unsworn statements are not so admissible, the Court may not consider the statements includ-ed therein. *E.g., Bonds v. Cox,* 20 F.3d 697, 702 (6th Cir.1994). In any event, consideration of the affidavit in this instance would not affect the Court's analysis, as the affidavit statements are generally consistent with the statements Lyons made in her deposition.

in favor of either party.' " *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Sys., Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ..."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

### III. *Analysis*

As an initial matter, the Court notes that Lyons, in her Memorandum in Opposition, acknowledges that the claims set forth in her Complaint related to the City of Xenia and Chief Prindle, and those against Officers Keith and Foubert brought under the Fourteenth Amendment and the laws of the State of Ohio, are without merit.[4] (Doc. # 36 at unnumbered pp. 4 & 12.) Accordingly, summary judgment on these claims is granted, and the Court need only consider the remaining § 1983 claims concerning probable cause and excessive force, as well as the applicability of the "qualified immunity" doctrine.

■ 42 U.S.C. § 1983 provides a civil cause of action to any citizen of the United States against any person who, under color of state law, deprives the citizen of "any rights, privileges, or immunities secured by the Constitution and laws of the United States." *See Christy v. Randlett,* 932 F.2d 502, 504 (6th Cir.1991) (citations omitted). In order to succeed on a § 1983 claim, a plaintiff must prove two elements: (1) that she was deprived of a right secured by the Federal Constitution or laws of the United States; and (2) that she was subjected to this deprivation by a person acting under the color of state law. *See Searcy v. City of Dayton* 38 F.3d 282, 286 (6th Cir.1994). "By its terms, § 1983 creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Gardenhire v. Schubert,* 205 F.3d 303, 310 (6th Cir.2000) (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)).

There is no dispute that Officers Keith and Lyons were acting within the scope of their official duties as Xenia police officers,

---

4. Lyons expressly declined addressing these claims (Doc. # 36 at unnumbered p. 4), and noted in her Memorandum that "the Fourteenth Amendment claims and the State law claims must fail as a matter of law." (*Id.* at unnumbered p. 12.)

and, as such, the Court's focus is on the first element of the § 1983 test: whether Officers Keith and Foubert deprived Lyons of a right secured to her by the Constitution or federal law. Lyons alleges that she was arrested without probable cause, and that Officers Keith and Foubert used excessive force in detaining her, in violation of rights secured to her by the Fourth Amendment. The Court will consider the issues raised in turn.

## A. *Probable Cause*

▊ The Fourth Amendment to the Federal Constitution guarantees that no arrest shall be undertaken without probable cause. "Generally, probable cause exists when the police 'have reasonably trustworthy information ... sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Gardenhire, supra,* at 315 (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). Generally, the existence of probable cause is a question of fact. *See id.* (citing *Pyles v. Raisor,* 60 F.3d 1211, 1215 (6th Cir. 1995)). Importantly, it should be remembered that "[t]he Constitution does not guarantee that only the guilty will be arrested." *Criss v. City of Kent,* 867 F.2d 259, 263 (6th Cir.1988) (quoting *Baker v. McCollan,* 443 U.S. 137, 145–46, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). Whether probable cause existed turns on whether the arrest was objectively reasonable under the circumstances. *See id.* at 262.

▊ It is Lyons' argument that she was wrongfully arrested at the moment Officer Keith grabbed her wrist in the kitchen (Doc. # 36 at unnumbered p. 9),[5] and Defendants acknowledge that the officer was trying to do just that. (Doc. # 27 at 18; Def.'s Reply Memo. (Doc. # 46) at 4–5, 7, 8.) Thus, it is at this point that the Court must determine whether probable cause existed. Importantly, because of the manner in which Lyons crafts her argument, the Court views the arrest without probable cause claim as applicable only to Officer Keith, as Officer Foubert was not present when Officer Keith grabbed Lyons' wrist in the kitchen, and therefore could not have assisted in any arrest at that point in time.[6]

The questions the Court is tasked with answering are properly sequenced as follows: viewing the facts in the light most favorable to Lyons, and considering the nature of the charges filed against her by Defendant police officers, (1) would a reasonable police officer find probable cause to believe that Lyons had obstructed official business by refusing to provide information useful to Officer Keith's investigation of Aiesha?; (2) would a reasonble police officer find probable cause to believe that Lyons had committed an assault by pointing her finger at Officer Keith?; (3) would a reasonable police officer find probable cause to believe that Lyons had resisted arrest by jerking her wrist away and walking to another room of her house when Officer Keith grabbed her left wrist?

---

**5.** Lyons states: "The arrest occurred when Officer Keith twisted the plaintiff's wrist. At that time she had no probable cause to believe that the plaintiff was causing or attempting to cause physical harm to her."

**6.** Obviously, Officer Foubert took part in the arrest at a later point, but because Lyons argues that the wrongful arrest took place in the kitchen, Officer Foubert could only have been assisting in an ongoing arrest. Assisting officers arriving at a scene later in time are not obliged to develop independent grounds for arrest (probable cause) before lawfully assisting an officer already undertaking an arrest. *See, e.g., United States v. Valencia,* 913 F.2d 378, 383 (7th Cir.1990)("The police who actually make the arrest need not personally know all the facts that constitute probable cause if they reasonably are acting at the direction of another officer or police agency.").

As Lyons was arrested pursuant to the ordinances of the City of Xenia, the Court must review the contours of those laws before it can make a determination on the issue of probable cause. In Xenia, the law governing "Obstructing Official Business" is set out in the General Offenses Code at section 608.06, and reads in pertinent part:

(a) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his or her official capacity, shall do any act which hampers or impedes a public official in the performance of his or her lawful duties.

(*See* Def.'s Reply Memo (Doc. # 46) at Ex. A.) A violation of this law is a misdemeanor of the second degree.

The ordinance is identical to Ohio Rev. Code § 2921.31, and for support Defendants cite to, in their Reply, the case of *State v. Merz*, 2000 WL 1051837 (Ohio Ct.App. July 31, 2000), in which the Ohio Twelfth District Court of Appeals recognized, at *2, that "overt acts [taken] to impede or obstruct [an] officer's investigation or business" can give rise to an obstructing official business offense. (*See* Doc. # 46 at Ex. B.) In *Merz*, it was found that the criminal defendant had refused to provide identification to officers who were investigating a report that the defendant's dogs were running loose and attacking pedestrians, and that when one of the officers attempted to restrain the defendant, he pushed the officer and attempted to flee.

The suspect in *Merz* did far more to thwart an investigation than did Lyons, and the Court does not find the facts of that case to be apposite. More instructive is the *Merz* court's comment that "simply refusing to provide one's information to a

police officer may not constitute obstruction of official business." [7] 2000 WL 1051837, at *2. It is not disputed that Officer Keith had the right to investigate Aiesha's involvement in the juvenile assault. Yet, accepting Lyons' version of the facts as true, all she was doing was delaying in providing Officer Keith with additional information about her daughter, until she could take her blood pressure medication. The question is whether this refusal could be understood by a reasonable officer as the commission of the offense of obstructing official business. After a review of Ohio case law, accepting Lyons' assertions as true, the Court concludes that it could not.

■ Ohio Rev.Code § 2921.31 has been construed by the Courts of Ohio as requiring an *affirmative* act in order to trigger culpability. *See City of Hamilton v. Hamm*, 33 Ohio App.3d 175, 514 N.E.2d 942 (1986) (construing identically worded local ordinance as identical to Ohio Rev. Code § 2921.31); *City of Cleveland v. Corrai*, 70 Ohio App.3d 679, 591 N.E.2d 1325 (1990) (same); *State v. McCrone*, 63 Ohio App.3d 831, 580 N.E.2d 468 (1998); *State v. Stephens*, 57 Ohio App.2d 229, 387 N.E.2d 252 (1978); *State v. Muldrow*, 10 O.B.R. 164, 10 Ohio Misc.2d 11, 460 N.E.2d 1177 (1983); *State v. Zefi*, 2001 WL 253149 (Ohio Ct.App. March 15, 2001); *State v. Mays*, 2000 WL 1681029 (Ohio Ct.App. Nov. 6, 2000). As the Twelfth District Court of Appeals has stated: "It is readily apparent that one cannot be found guilty of either the statute or the ordinance unless he 'hampers or impedes a public official in the performance of his lawful duties.' Other courts have held, and we agree, that one cannot be guilty of obstructing official business by doing noth-

---

7. Of course, the fact that a "simple refusal" to provide information may not give rise to guilt *beyond a reasonable doubt* does not foreclose

the conclusion that it might give rise to an *objectively reasonable* perception of guilt (i.e., probable cause).

ing." *Hamm, supra,* at 943 (citing *Muldrow, supra* ). "The mere failure of a person to respond to an officer's request is not in violation of the ordinance." *Id.* at 944. Additionally, "the mere refusal to produce identification upon request by a police officer will not support a finding of obstructing official business." *Zefi, supra,* at *4. *See also McCrone, supra,* at 471 ("refusing to cooperate with a law enforcement officer is not punishable conduct") (citing *Columbus v. Michel,* 55 Ohio App.2d 46, 378 N.E.2d 1077 (1978)).

Thus, a *conviction* will only lie where the accused misdemeanant has actually committed an act hampering or impeding official police business. On the matter of *probable cause,* a reasonable police officer, accustomed to encountering recalcitrant citizens in the regular course of her duty, would certainly be aware of the elements necessary to prove an obstructing official business charge, and would not arrest a citizen on such a charge under the facts as stated by Lyons in her deposition and accepted at this point in time as true. Lyons' only "acts" were her relocating to the kitchen, and her yelling and pointing a finger at Officer Keith. The Court does not find that any of these supposed "acts" constitute affirmative acts within the ambit of the offense charged; Ohio courts require something more.

When Officer Keith's version of the events are taken into consideration, the facts may reveal that probable cause existed to make the arrest. However, for the moment, the Court may not consider her version of the facts. Under Ohio law, and Lyons' version of the facts, her refusal to supply Officer Keith with the information requested was not an obstruction of official business. Therefore, the Court cannot award Officer Keith judgment as a matter of law at this juncture, as genuine issues of

material fact exist with respect to Lyons' conduct on the day in question.

Regarding the charge of assault, Xenia General Offenses Code § 636.02 states that "[n]o person shall knowingly cause or attempt to cause physical harm to another . . .," and "[n]o person shall recklessly cause serious physical harm to another . . . ." (Doc. # 46 at Ex. A.) The ordinance is identical in all material respects to Ohio Rev.Code 2903.13.

■ Under Lyons' version of the facts, the sole ground for which Officer Keith arrested her was her act of pointing her finger at her. It may be that Officer Keith felt threatened and assaulted, but it is not evident under these facts that a reasonable police officer would have had probable cause to believe that the offense of assault was being committed. Defendants cite no Ohio case law in support of their argument that the act of pointing a finger at a police officer, even where accompanied by yelling, gives rise to probable cause to believe that the offense of assault is being committed. The Court finds there are genuine issues of material fact as to whether Officer Keith had probable cause to believe that Lyons was assaulting her, and, as such, summary judgment is not proper.

■ Regarding the resisting arrest charge, the Court must first clarify that it was Lyons' own arrest on which she was charged with resisting, not the arrest of her daughter Aiesha. Defendants, in their Reply, attempt to argue that there were two different grounds for charging Lyons with resisting arrest: her own arrest and that of Aiesha. (Doc. # 46 at 8.) However, the suggestion that Lyons was arrested for resisting the arrest of Aiesha is not well taken. This argument was not raised in Defendant's primary memorandum, and, in any event, because Aiesha was not being arrested, there was no arrest of hers to be resisted.[8] Additionally, the Court rejects

---

8. Defendants state in their Reply Memorandum that "Plaintiff does not dispute that the

Defendants' argument that the refusal by Lyons to immediately provide information about Aiesha gives rise to a resisting arrest charge. Again, Defendants attempt to import facts surrounding Officer Keith's interaction with Aiesha into the calculus surrounding that officer's interaction with Lyons. They cite the holding in *Merz, supra*, to support their argument that Lyons' refusal to provide information on her daughter constituted resisting arrest. (Doc. # 46 at 8.) The argument is misplaced.

In *Merz*, the Twelfth District Court of Appeals stated that a "refusal to provide one's identification in the course of a proper investigation of a misdemeanor, even where such does constitute obstructing official business, may provide sufficient grounds for a lawful arrest for the misdemeanor offense of resisting arrest." 2000 WL 1051837, at *2 (citing *State v. Rose*, 75 Ohio App.3d 656, 600 N.E.2d 382, 384 (1991) and *McCrone*, 63 Ohio App.3d 831, 833, 580 N.E.2d at 472). As noted above, the defendant in *Merz* was being investigated for a report that his dogs were running loose, a fact which, if true, would have constituted a misdemeanor. When he was approached for identification, he refused to display it. Indeed, when the police insisted on his identification, he shoved one of the officers and attempted to flee. The Twelfth District Court of Appeals held that such conduct constituted obstruction of official business. Furthermore, having determined that the officers had probable cause to arrest or cite him

for allowing his dogs to run loose, the court also determined that the defendant's behavior constituted the crime of resisting arrest.

Again, *Merz* is inapposite to the case at bar. Lyons was not the primary subject of Officer Keith's investigation. If Aiesha, not Lyons, had refused to identify herself to Officer Keith, and had forcefully resisted cooperating in the investigation of the juvenile assault complaint, then *Merz* would provide a suitable analogy. As it happens, however, Lyons' delay in supplying background information about her daughter before she (Lyons) had an opportunity to take her medication presents an entirely different scenario.

The relevant question is whether, under the circumstances, Lyons' act of snapping her wrist away from Officer Keith gave rise to probable cause to believe that the offense of resisting her own arrest, not that of Aeisha, had taken place. Section 608.08 of the Xenia General Offenses Code states in part that "[n]o person, recklessly or by force, shall resist or interfere with a *lawful* arrest of the person or of another" (emphasis added). (*Id.* at Ex. A.) This statute is in all material respects the same as Ohio Rev.Code § 2921.33. Again, the focus of the resisting arrest charge is argued to be Lyons' act of snapping her wrist away from Officer Keith.[9] As with the assault charge, Defendants submit no relevant case law on what constitutes resisting arrest. Furthermore, the two cases cited in *Merz* to support the proposi-

---

arrest of her daughter was lawful." (Doc. $46 at 8.) There is absolutely no basis for this comment, seeing as Aiesha was never placed under arrest. Indeed, if Lyons had been arrested for resisting the arrest of Aiesha, an arrest which was non-extant, it necessarily would have been without probable cause, and would provide yet another basis for Lyons' § 1983 action.

**9.** No argument has been put forward by Defendants that any of Lyons' actions subsequent to her snapping her wrist away from Officer Keith provided grounds for the resisting arrest charge. In any event, since they are the events in the kitchen that form the basis of Lyons' allegedly wrongful arrest, the Court presumes the corrollary is also true: that the only resistance at issue is that stemming from the arrest in the kitchen.

tion that a failure to provide identification is enough to constitute resisting arrest are, like *Merz* itself, wholly inapposite. In *Rose*, the underlying crime giving rise to the arrest for which the defendant was charged with resisting was an ordinance which made it unlawful for a driver of an automobile to refuse to display his identification upon the demand of an officer, when such a demand was properly made. 600 N.E.2d at 384. The trial court found that the defendant had forcefully resisted displaying his license, but had not delayed so long as to violate the ordinance. *Id.* at 383. However, it found that the defendant's forceful resistance was substantial enough to give the officer *probable cause* to arrest him on the charge, and supported a finding that the defendant had resisted same. *Id.* The defendant was therefore found guilty of resisting arrest, even though he was acquitted on the underlying charge for which he was arrested. The Second District Court of Appeals affirmed in all respects. *Id.* at 384. A similar result, based on a like set of facts, was reached in *McCrone*, 63 Ohio App.3d 831, 580 N.E.2d 468.

When the facts of this case are construed in a light most favorable to Lyons, the obvious material difference between this case and the cases upholding convictions for resisting arrest is the apparent absence of probable cause on the part of Officer Keith to carry out an underlying *lawful* arrest. "Ohio courts have consistently held that one of the required elements of this crime is a lawful arrest." *State v. Barker*, 128 Ohio App.3d 233, 714 N.E.2d 447, 451 (1998)(citing *State v. Hendren*, 110 Ohio App.3d 496, 674 N.E.2d 774, 775–76 (1996)). "Ohio courts have also consistently held that an arrest is lawful if the officer had probable cause ..., even if the defendant is ultimately found not guilty...." *Id.* (citations omitted); *see also Rose*, 600 N.E.2d at 383 ("A lawful arrest is a necessary element of the

crime of resisting arrest," and an arrest is "lawful" if supported by probable cause); *McCrone*, 580 N.E.2d at 471. Thus, even if the snapping of the wrist were reckless or forceful, a preliminary question is whether the arrest for obstructing official business or assault was lawful (i.e., supported by probable cause). As noted, this latter question cannot be answered by the Court at this time. In other words, whether probable cause existed as to the resisting arrest charge cannot be determined with finality until it is first determined whether Officer Keith had probable cause to believe Lyons had committed at least one of the other two charged offenses, those being assault and obstructing official business.

The Court need not determine at this time whether the reflexive snapping away of one's wrist constitutes forceful or reckless resistance of an arrest, because it is plain that where there is no legal basis for a *lawful* arrest, a charge of resisting arrest will not lie. Accordingly, because the Court has found that genuine issues of material fact exist as to whether Officer Keith had probable cause to believe that Lyons had assaulted her or had obstructed official business, it also finds that genuine issues of material fact exist as to whether Officer Keith had probable cause to believe that Lyons had committed the crime of resisting arrest. For these reasons, Defendants' Motion for Summary Judgment is OVERRULED with respect to Lyons' allegations that her Fourth Amendment rights were violated when Officer Keith arrested her. With respect to Officer Foubert, said Motion is SUSTAINED as to this issue.

### B. *Use of Excessive Force*

A claim that officers used excessive force in carrying out an arrest invokes the protections of the Fourth Amendment,

which guarantees citizens the right to be secure in their persons. *See Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Thus, whether an officer's use of force is excessive, that is, whether it is unreasonable under the circumstances, must be analyzed under the Fourth Amendment's "reasonableness" standard. *Id.* at 395, 109 S.Ct. 1865. "[S]ome degree of physical coercion or threat thereof" is constitutionally acceptable when police officers are effecting a stop or full arrest. *Id.* at 396, 109 S.Ct. 1865. Importantly, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (internal quotation and citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97, 109 S.Ct. 1865.

The Complaint does not set forth the specific facts on which Lyons bases her allegations of excessive force. Furthermore, in her Memorandum in Opposition, Lyons only vaguely elaborates on this aspect of her Complaint, relying mainly on her own blanket statement that Officers Keith and Foubert used excessive force. The Court extracts from Lyons' Memorandum three potential bases for the excessive force claim: Officer Keith's act of "twisting" her wrist when she first attempted to arrest Lyons in her kitchen; Officer Foubert's "tackling" of Lyons when he entered her house; and the "tightness" with which the officers applied the handcuffs. (*See* Doc. # 36 at unnumbered p. 11.)

As for the alleged "twisting" of Lyons' wrist by Officer Keith, the Court notes that Lyons, in her deposition, stated that she did not believe Officer Keith's use of

force in "twisting" her wrist was excessive. (Lyons Depo. at 207.) Furthermore, this was the only physical contact that Lyons had with her. (*See id.* at 199–200.) Therefore, because there is no evidence in the record, as would be admissible at trial, *see* Fed.R.Civ.P. 56(e), supporting an excessive force claim against Officer Keith, summary judgment on this issue is appropriate with respect to this Defendant.

■ With respect to the application of the handcuffs, Lyons states that Officer Foubert pulled the handcuffs "as tight as he could get them," so that they were "very, very, very tight." (Lyons Depo. at 203.) Furthermore, Lyons has submitted photographic evidence of a bruise on one of her wrists allegedly resulting from the tightly applied handcuffs. (*See id.* at Ex. G.)

In *Martin v. Heideman*, 106 F.3d 1308, 1310 (6th Cir.1997), a § 1983 plaintiff testified that he was handcuffed so tightly that his hands swelled and went numb. In that case, the Sixth Circuit held that evidence of "excessively forceful handcuffing" is a proper ground for an excessive force claim. *Id.* at 1313.

The Court finds that Lyons' deposition testimony raises a genuine issue of material fact as to whether Officer Foubert applied the handcuffs to her wrists in an excessively forceful fashion. Consequently, Defendants' summary judgment motion on this issue must be denied. The Court notes again that this aspect of the claim applies only to Officer Foubert, who applied the handcuffs; it does not apply to Officer Keith.

■ The remaining excessive force issue is whether Officer Foubert used excessive force when he allegedly "tackled" Lyons. As noted above, when considering the constitutionality of an officer's use of force, a court must be mindful of the par-

ticular circumstances in which the officer found himself. Here, under Lyons' version of the facts, the most that can be said is that she was being uncooperative with Officer Keith. There is no evidence that Officer Keith's person was in jeopardy. Nevertheless, Lyons alleges that Officer Foubert charged into her house as if he were on a football field, tackling her at "full speed." (Lyons Depo. at 192, 200.) Accepting this evidence as true, as the Court must in ruling on Defendants' Motion, it raises a genuine issue of material fact as to whether Officer Foubert's actions were excessive and unreasonable under the circumstances.

At the time of the occurrence in question, Lyons was forty-three years old, approximately five feet, four inches in height, and weighed about 175 to 180 pounds. (*Id.* at 175.) Officer Foubert, by comparison, was approximately five feet, eleven inches tall, and weighed between 230 and 240 pounds. (Foubert Depo. at 8.) Defendants make much of the lack of evidence in the record of any permanent injuries suffered by Lyons, construing the facts supporting this observation as positive evidence that Officer Foubert did not tackle Lyons. Had a man of his size tackled her, Defendants' argue, surely she would have suffered permanent injury.[10] That argument, however, goes to the weight of the evidence. For the purpose of summary judgment, the inference Defendants draw, when viewed next to Lyons' deposition testimony, in conflict with such an inference, creates a genuine issue of material fact as to whether Officer Foubert used excessive force.

Because Lyons' deposition testimony tends to show that Officer Foubert used excessive force in both applying the handcuffs to her wrists and in tackling her, genuine issues of material fact exist, and, accordingly, Defendants' Motion must be denied with respect to this issue insofar as it concerns Officer Foubert.

In sum, regarding the issue of excessive force, Defendants' Motion is SUSTAINED with respect to Officer Keith, and OVERRULED with respect to Officer Foubert.

### C. *Qualified Immunity*

In the interest of protecting public officers in the course of performing their discretionary duties from unduly onerous lawsuits under § 1983, the Supreme Court has recognized "qualified immunity" for such officers, "shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Thus, in order for a public officer to be held accountable, the law surrounding the right she is charged with violating must be clearly established, and be one about which a reasonable officer in her position would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Furthermore, the legal right that forms the focal point of the Court's inquiry must be defined with particularity, and not in the abstract. *See Anderson, supra,* at 639–40, 107 S.Ct. 3034. For instance, it is not enough to say that because the *general* right to due process as guaranteed by the Due Process Clause is clearly established, any *specific action* later found to be viola-

---

**10.** Indeed, as to the whole of Lyons' excessive force claim, Defendants argue that the lack of evidence of any permanent damage resulting from any physical contact with them should be construed by this Court as evidence of the lack of use of excessive force. The Court

believes this argument is relevant to weight, in the first instance, and damages, if Officer Foubert is found liable. Herein, the inference Defendants draw conflicts with Lyons' deposition testimony, and creates a genuine issue of material fact.

tive of the Due Process Clause is *per se* violative of "clearly established" law. *See id.* at 639, 107 S.Ct. 3034. Rather, a court must more closely scrutinize "the contours" of the right allegedly violated; it must attempt to analyze that right in a particularized, less generalized, context. Thus, even if a trier of fact could find that a constitutional violation had occurred, the relevant question, in determining whether immunity is appropriate, is whether an officer could have reasonably believed that her actions were lawful, in light of the existing facts and the law as generally understood at the time of her action. *See id.* at 641, 107 S.Ct. 3034.

 Even where an action is deemed objectively unreasonable within a Fourth Amendment analysis, that determination does not automatically require a determination that the action could not in any respect have appeared appropriate and reasonable to a reasonable officer at the time. *Id.* at 643–44, 107 S.Ct. 3034. "Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (quoting *Anderson,* 483 U.S. at 641, 107 S.Ct. 3034). Qualified immunity is lost only where the belief in the existence of probable cause is unreasonable. *See Malley v. Briggs,* 475 U.S. 335, 345, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1985). The same is true in the excessive force context. Even where a genuine issue of material fact exists as to whether an officer used excessive force, that does not prevent the Court

from finding, as a matter of law, that the officer acted reasonably in light of the state of the law as it was then understood. *See Saucier v. Katz,* 533 U.S. 194, 207–09, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Thus, while reasonableness in the Fourth Amendment context will frequently be left to the trier of fact to determine, reasonableness in the qualified immunity context "ordinarily should be decided by the court long before trial." *Hunter,* 502 U.S. at 228, 112 S.Ct. 534; *see also Saucier,* 533 U.S. at 200–01, 121 S.Ct. 2151. The distinction in the latter context is that the analysis turns on the legal issue of whether the law surrounding the particularly defined right allegedly violated was "clearly established." To lose the protection of qualified immunity, "in the light of pre-existing law[,] the unlawfulness [of the officer's actions] must be apparent." *Gardenhire, supra,* at 311.

 In determining whether a constitutional or federal right is "clearly established," the Court must look first to decisions of the Supreme Court, then to decisions of the Sixth Circuit and other courts within the circuit, and then to decisions of other circuits. *See Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir.2001). In addition, where the issue turns on whether an arrest for a state law offense was made without probable cause, reference to the language of the statute governing the offense, and to state court cases shedding light on the contours of the said offense, is also a requisite. *See, e.g., Estate of Dietrich v. Burrows,* 167 F.3d 1007, 1010–12 (6th Cir.1999).[11] To find that the

---

**11.** Whereas other constitutional questions typical to § 1983 litigation, such as, for example, those concerning excessive force, due process, and equal protection, require no reference to state law, a question concerning probable cause does. Barring constitutional infirmities, federal courts must construe state statutes in conformity with how they are interpreted by the state's highest court. *See*

*Garner v. Louisiana,* 368 U.S. 157, 166, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961). For identical reasons, determining whether probable cause existed requires an interpretation of the state statute on which the arrest was based. For example, in *Estate of Dietrich,* where the § 1983 plaintiff had been arrested for violating Ohio's concealed weapons law, the Sixth Circuit looked to that law, Ohio Rev.Code

right claimed by Lyons is "clearly established," it is not necessary for the Court to find that it has been recognized only in cases that are on all fours with the facts of the case at bar, but it does require a determination that the relevant cases are close enough on their facts to have made the unlawfulness of Officer Keith's and Officer Foubert's actions apparent in this instance. *See id.* at 1012.

■ With respect to Officer Keith, the Court has already found that genuine issues of material fact exist as to whether she had probable cause to arrest Lyons for obstructing official business, assault, and resisting arrest. While it is clearly established that one has the right to be free from arrest not supported by probable cause, the more narrowly focused question for purposes of qualified immunity is whether Officer Keith reasonably could have believed that Lyons had committed any of the offenses for which she was arrested, even if the trier of fact were to find in hindsight that she did not. The implication of this question touches on what the Supreme Court said in *Anderson:* genuine issues of material fact may exist such that the trier of fact could find, *as a matter of fact,* that the officer acted unreasonably within the context of the probable cause analysis, while the Court may find,

preemptively and *as a matter of law,* that, though possibly unreasonable under the Fourth Amendment, the actions were not so unreasonable as to impose liability, given that the law surrounding such facts was not clearly established as of the time of the incident. 483 U.S. at 641, 107 S.Ct. 3034; *see also Hunter,* 502 U.S. at 228–29, 112 S.Ct. 534; *Saucier,* 533 U.S. at 205–06, 121 S.Ct. 2151.

The relevant questions in the qualified immunity context are the same as those asked in the probable cause context, subject to the added dimension that they must be analyzed in light of the law as it would have been understood by a reasonable officer in Officer Keith's position at the time of Lyons' arrest. *See Saucier,* 533 U.S. at 205, 121 S.Ct. 2151. Therefore, viewing the facts in a light most favorable to Lyons, the Court asks: (1) was the right of an individual to be free from arrest for obstructing official business, when the individual committed no affirmative acts of obstruction, but merely delayed in providing information about her daughter to an officer conducting an investigation of her daughter, clearly established by case law at the time of this incident?; (2) was the right of an individual to be free from arrest for assault, when the individual merely pointed her finger and yelled at an

§ 2923.12(A), in making its determination as to whether the district court properly found that issues of fact existed on the question whether the police (the § 1983 defendants) had probable cause to arrest the plaintiffs. 167 F.3d at 1011. Likewise, under its qualified immunity analysis, while noting that it is usually the Supreme Court's or its own precedents which govern whether a right is clearly established, it addressed that issue by turning, once again, to the language of the state statute. *Id.* at 1012. The "clearly established" law, it held, was that "probable cause determinations involve an examination of all facts and circumstances *within an officer's knowledge at the time of an arrest," id.* (citing *Carroll v. United States,* 267 U.S. 132, 162, 45

S.Ct. 280, 69 L.Ed. 543 (1925)) (emphasis in original). Ultimately, whether the § 1983 plaintiff's right to be free from arrest not supported by probable cause was clearly established, under the facts of that case, turned, as did the Fourth Amendment probable cause analysis, on the construction of the state law. This makes sense when one considers that probable cause determinations are the bastion of criminal law, which in the context of state statutes are within the exclusive subject matter jurisdiction of the state courts. Thus, it will always be the state courts which make such determinations, and the decisions of those courts, not the federal courts, with which officers will be familiar.

officer, clearly established by case law at the time of this incident?; (3) was the right of an individual to be free from arrest for resisting arrest, when the individual merely snapped her wrist away from an officer and no underlying *lawful* basis to arrest the individual existed, clearly established by case law at the time of this incident?

Each of these questions presented must be answered in the affirmative. As is apparent from the Court's discussion of probable cause, it is clearly established in the appellate case law of Ohio that an individual cannot be found guilty of obstructing official business merely for delaying in providing information to an investigating officer. Moreover, the law is so clearly settled that reasonable police officers could not possibly disagree over whether probable cause of such a violation existed under the facts as set forth by Lyons, which are presumed as true for purposes of ruling on summary judgment.

 Regarding the right to be free from arrest for assault where the only offense has been the pointing of a finger at an officer, aside from the knowledge that the jury in Lyons' criminal case found her not guilty of assault, the Court has been unsuccessful in identifying other cases involving similar facts. The Court believes there is a reason for this: pointing a finger simply has never risen, and does not rise now, to the level of assault; neither does it give rise to probable cause that such an

offense has been committed, and reasonable police officers could not rationally disagree on this issue. The Supreme Court has made it clear that official actions do not enjoy the protection of qualified immunity merely because "the very action in question has [not] previously been held unlawful." *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034. What is key is that "in light of pre-existing law the unlawfulness must be apparent." *Id.* In this case, the Court finds it apparent that in arresting Lyons for pointing her finger and yelling at her, if that is indeed all that occurred, Officer Keith's actions were unlawful.

There is no suggestion that Lyons actually caused Officer Keith harm of any sort. Thus, the arrest for assault must be supportable by evidence that Officer Keith reasonably apprehended an imminent threat to her physical safety at the moment Lyons pointed at her and she grabbed Lyons' wrist. There is no evidence in the record of any such apprehension.[12] Defendants have simply failed to adduce any facts tending to show that Officer Keith had any grounds for arresting Lyons for assault. Serious First Amendment questions would be raised if the Ohio assault statute were interpreted so that the mere pointing of a finger could be a ground for arrest. Given that Defendants have adduced no evidence that Lyons was provoking Officer Keith into combat, it is to be remarked that "[t]he

---

12. In their Motion, Defendants state that Lyons' behavior in the kitchen was "threatening," that "officer safety at this point was a serious concern," and that Officer Foubert perceived that Officer Keith "was in trouble by the tone in her voice." Defendants have submitted absolutely no evidence supporting a finding that Lyons' behavior was threatening or that Officer Keith's safety was in jeopardy. As for Officer Foubert's perceptions, he stated in his deposition that he detected a "distressed tone" in Officer Keith's call for backup. (Foubert Depo. at 12.) This evi-

dence is unconvincing for two reasons. *First,* Officer Keith did not radio for backup until after she had grabbed Lyons' wrist and attempted an arrest, and after Lyons had retreated to another room in her house. (Lyons Depo. at 189–92.) Thus, Officer Foubert could not have perceived Officer Keith's state of mind at the relevant time in question. *Second,* Officer Foubert's testimony, while admissible evidence of his own state of mind, is not admissible as evidence of *Officer Keith's* state of mind. *See* Fed.R.Evid. 701.

freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Houston v. Hill,* 482 U.S. 451, 462–63, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (finding verbal protestations, where not obscene or in the nature of "fighting words," to be protected by the First Amendment). The act of pointing a finger is nothing more than any other non-threatening hand gesticulation that typically accompanies heated conversation or yelling. Citizens have a basic right to argue with the police, and it simply cannot be maintained that in a society devoted to the preservation of the freedom of expression and protest in public parks and streets and sidewalks, so long as the general peace is not disturbed, *see United States v. Grace,* 461 U.S. 171, 177, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983), a woman does not have the right to express herself freely and non-violently in her own home. The right to do so is clearly established.[13]

Construing the facts and all reasonable inferences in a light most favorable to Lyons, the Court finds that a reasonable officer in Officer Keith's position could not have had probable cause to believe Lyons had assaulted her.

Finally, because a resisting arrest charge is only warranted where the underlying arrest is lawful, and because simply delaying in giving information to an investigating police officer and pointing a finger at her do not constitute grounds for a *lawful* arrest (on the charges for which Lyons was arrested), resisting arrest, even if *actionable* resistance could be proved, does not provide an additional ground for arrest. Construing the facts and all reasonable inferences in a light most favorable to Lyons, the Court finds that a reasonable officer in Officer Keith's position could not have believed she had probable cause to arrest Lyons for resisting arrest.

Having closely scrutinized the facts of this case in light of existing, relevant case law, as the Court must do pursuant to *Anderson, Hunter* and *Saucier,* the Court finds that genuine issues *of fact* exist that go to the heart of not only the probable cause issue but also the qualified immunity issue. Accordingly, the Court cannot at this time say that Officer Keith enjoys qualified immunity from § 1983 liability. *See Brandenburg v. Cureton,* 882 F.2d 211, 215–16 (6th Cir.1989) (holding that although the "court ultimately decides the law to be applied," where the legal question of immunity "is completely dependent

13. If the law were otherwise, there would be no protection from police abuse of authority. Every reflexive act of pointing a finger, or some other gesticulation, in protest of police tactics, would give rise to an assault charge. If that were the case, and if, in addition, every wise crack or sarcastic comment that did not immediately answer a question posed, or every verbal protestation, or every momentary silence in the face of an officer's query, no matter how reasonable, could be taken as grounds for arrest for obstructing official business, an individual's inherent right to criticize official action would effectually be silenced. Even if such charges were typically dismissed, if an officer could readily invoke qualified immunity, and thus escape liability, he would be far less likely to hesitate in mak-

ing such arrests. The ultimate chilling effect on speech and protest, even in one's own home, is evident.

Context is very important to a qualified immunity analysis. In the case at bar, viewing the facts in a light most favorable to Lyons, it simply cannot be said that Officer Keith found herself in a novel situation, involving fuzzy questions of law, having to make split-second decisions concerning her own physical safety, or the safety of others. No matter of urgency necessitated the events which ultimately unfolded. Indeed, when the facts are viewed in this light, all she needed to do was allow Lyons to take her medication and then explain the underlying basis for her visit.

upon which view of the facts is accepted," the case must go to the jury).

With respect to Officer Foubert, evidence of excessively forceful handcuffing precludes protection by qualified immunity at the summary judgment stage of litigation, as the right to be free from such is clearly established. *See Martin,* 106 F.3d at 1313. It is likewise clearly established that an individual, standing in her own home and not provoking a physical altercation, has the right to be free from being tackled forcefully by a police officer. As such, at this stage, Officer Foubert, as well, may not take shelter under the qualified immunity doctrine. Because there is a genuine issue of material fact as to whether Officer Foubert used excessive force, the Court does not find at this juncture that Officer Foubert is entitled to qualified immunity.

Accordingly, as it relates to their defense of qualified immunity, Defendants' Motion for Summary Judgment is OVERRULED.

IV. *Conclusion*

Based on the reasoning and citation to authority as set forth above, the Court hereby SUSTAINS in part and OVERRULES in part Defendants' Motion for Summary Judgment (Doc. # 27), as follows: the Motion is SUSTAINED as to (1) all claims against the City of Xenia, Chief Prindle, and those arising under state law, (2) any claim against Officer Keith arising under an allegation of use of excessive force, and (3) any claim against Officer Foubert arising under an allegation of arrest without probable cause; the Motion is OVERRULED with respect to (1) the claim against Officer Keith for arrest without probable cause, and (2) the claim against Officer Foubert for use of excessive force. Furthermore, when the facts, and reasonable inferences that can be drawn therefrom, are viewed in a light most favorable to Lyons, the Court is unable to hold that Officers Keith and Foubert are entitled to qualified immunity.

Counsel listed below will take note that a telephone conference call will be held at 8:50 a.m., on Tuesday, February 4, 2003, for the purpose of setting a trial date and other dates leading to a resolution of this litigation.