**ESTATE OF Kenneth G. DIETRICH, et al., Plaintiffs–Appellees,**

v.

**Richard W. BURROWS, et al., Defendants–Appellants.**

No. 97–3644.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 29, 1998.

Decided Feb. 12, 1999.

---

Nick Tomino (argued and briefed), Ronald A. Mingus (briefed), Reminger & Reminger, Cleveland, Ohio, for Appellants.

Edward G. Kramer (argued and briefed), Kramer & Associates, Cleveland, Ohio, for Appellees.

Before: DAUGHTREY and MOORE, Circuit Judges; COHN,* District Judge.

DAUGHTREY, Circuit Judge.

This appeal is from the district court's order denying summary judgment to the defendants on the basis of qualified immunity. Citing their 1991 arrests for carrying concealed weapons, the plaintiffs, Kenneth Dietrich and Brian Timothy Dietrich, advanced federal constitutional and Ohio state tort claims against the defendants, Richard Burrows, Lloyd Barcus, James Lang, and James Jenkins, all of whom served at relevant times in law enforcement capacities for Perkins Township, Ohio. The defendants moved for summary judgment on those causes of action and the district court granted the motion in part and denied it in part. For the reasons set out below, we affirm the judgment of the district court in all respects.

## FACTUAL AND PROCEDURAL BACKGROUND

Kenneth Dietrich, a former police chief of Perkins Township, owned Firelands Investigative Agency, Inc., a private company engaged in investigative and security work. In the fall of 1990, Dietrich contacted defendant Richard Burrows, then the police chief of Perkins Township, to inform the chief of Dietrich's intention to begin offering armed money courier service to area businesses to ensure the safe transfer of cash from Firelands customers to intended destinations. At that time, Dietrich was aware that township police officers already offered similar courier services, both during and after work hours. Dietrich thus began communicating with Marie Hildebrandt, a township trustee, about liability issues presented by township employees' use of township vehicles and uniforms in the performance of jobs for personal gain.

In response to Dietrich's inquiries, Hildebrandt requested the opinion of the local prosecutor's office concerning the financial exposure of the township should an officer

performing courier services be injured, injure another person, or misappropriate funds entrusted to that officer for delivery. The assistant prosecuting attorney responded by letter opining that the township's general liability insurance policy would most likely not cover township employees engaged in "side jobs." Furthermore, local newspapers began reporting on the police department's practices, increasing the pressure on the township to reconsider its position regarding the additional activities of its officers. Finally, Chief Burrows issued an order, effective August 13, 1991, mandating that police vehicles no longer be used for personal purposes.

During the summer of 1991, Officer Gregory Van Richardson of the Perkins Township Police Department informed Burrows that Firelands provided money courier service from a particular bank at three specific times every business day. On September 4, 1991, Van Richardson also left a message for Burrows that Dietrich himself would be providing courier service from that same bank the following day and "that maybe the person who normally does this run for Firelands was on vacation."

The next day, September 5, 1991, Dietrich and his son, Brian Timothy Dietrich, visited the bank branch to collect $1,275 in coins to be delivered to a pharmacy that had contracted with Firelands for courier services. As they were driving toward the pharmacy, the Dietrichs noticed they were being followed by a Perkins Township police officer in a marked car and, therefore, pulled off the road. Defendant Barcus approached Kenneth Dietrich and asked whether the plaintiff was carrying a concealed weapon. After Dietrich admitted that he was carrying a firearm, and after defendants Burrows and Lang also stopped at the scene, the plaintiff was arrested and taken to police headquarters. Similarly, defendant Jenkins, yet a fourth officer at the scene, approached Brian Timothy Dietrich, who was seated in the passenger seat of the company van, and inquired whether he, too, was in possession of a concealed weapon. At that time, Brian

* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

Timothy Dietrich showed the officer a brief-case near his seat that contained a loaded handgun and was arrested also. Although both plaintiffs were taken into custody on weapons charges, the police did not frisk either individual, nor did they search the Dietrichs' van for other weapons. Moreover, the local prosecutor subsequently dropped the charges lodged against the plaintiffs.

The Dietrichs then filed suit pursuant to the provisions of 42 U.S.C. § 1983 against Burrows and against the police officers who participated in the plaintiffs' arrests, alleging that they violated the Dietrichs' constitutional rights to substantive due process and to be free from false arrests. The federal court complaint also included claims for damages for the state law torts of false arrest and infliction of emotional distress.

During the course of the litigation, the plaintiffs sought leave of the court to amend their complaint to allege an additional § 1983 claim for retaliation for the exercise of First Amendment freedoms. That motion was granted, but an amended complaint was never actually filed with the district court. Nevertheless, all defendants proceeded as if the amended complaint had indeed been filed and moved for summary judgment on all claims raised by the Dietrichs, in part based upon the allegation that the doctrine of qualified immunity insulated the defendants from liability in this matter.

In addressing the summary judgment motion, the district court concluded that the police officer defendants had no probable cause to believe the plaintiffs were committing or had committed a crime at the time they were arrested. The defendants were, therefore, denied summary judgment in their favor on the plaintiffs' Fourth Amendment claim, denied summary judgment on the plaintiffs' state law claims, and denied the protections of a qualified immunity defense. The court also denied summary judgment based on qualified immunity to the defendants on any First Amendment claims. Because the plaintiffs' substantive due process claim was subsumed into the false arrest allegation, the court did, however, grant summary judgment to the defendants on the Dietrichs' Fourteenth Amendment cause of action. From these rulings, the defendants now appeal.

## DISCUSSION

### I. Standard of Review

This court evaluates a *grant* of summary judgment *de novo* using the same legal standard employed by the district court. *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994). Consequently, such a decision will be found proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ A decision to *deny* a motion for summary judgment is generally not appealable until after the conclusion of a trial on the merits. *See Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir.1995). "Denial of summary judgment on the basis of qualified immunity is, however, appealable immediately as a final judgment under the collateral order doctrine." *Id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Rodgers v. Jabe*, 43 F.3d 1082, 1085 (6th Cir.1995)). This court reviews "the district court's denial of a qualified immunity claim de novo." *Id.*

### II. Fourth Amendment Claim

### A. Probable Cause Determination

■ The defendants first contend that the district court's denial of their summary judgment request relating to the Dietrichs' Fourth Amendment claim was in error because Chief Burrows and the other township police officers had probable cause to arrest the plaintiffs for carrying concealed weapons. As the Supreme Court has stated, "It is not disputed that the Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). Probable cause justifying an arrest "means facts and circumstances within the officer's knowledge that are sufficient to warrant a

prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* at 37, 99 S.Ct. 2627. *See also Criss v. City of Kent,* 867 F.2d 259, 262 (6th Cir.1988).

Pursuant to the provisions of O.R.C. § 2923.12(A), "[n]o person shall knowingly carry or have, concealed on his or her person or concealed ready at hand, any deadly weapon or dangerous ordnance." Because both Kenneth and Brian Timothy Dietrich undisputedly did have such concealed weapons either on their person or "ready at hand" when stopped by township police of September 5, 1991, the defendants maintain that those facts alone provided them with the requisite probable cause to make the arrests challenged in this proceeding. The Dietrichs argue, however, that the affirmative defense provisions of O.R.C. § 2923.12(C) make clear that the officers did not, in fact, have probable cause to believe an offense had been committed, was underway, or was about to be committed. Subsection (C)(1) of the statute allows a weapon to be "carried or kept ready at hand by the actor for defensive purposes, while the actor was engaged in or was going to or from the actor's lawful business or occupation, which business or occupation was of such character or was necessarily carried on in such manner or at such a time or place as to render the actor particularly susceptible to criminal attack, such as would justify a prudent person in going armed."

In rebuttal, the defendants suggest that police officers cannot be expected to analyze the merits of every asserted affirmative defense prior to completing an arrest. In support of this position, the officers cite the unpublished Ohio Court of Appeals decision in *Weible v. City of Akron,* 1991 WL 77187 (Ohio App. 1991). In *Weible,* police officers arrested the plaintiff for concealing a handgun in her purse. Weible protested, however, claiming a right to possess the concealed weapon because she had been raped eight months earlier and was carrying the gun for her own protection. *Id.* at *1. In dispensing with the plaintiffs' false arrest cause of action, the Ohio Court of Appeals noted that there was clearly probable cause to arrest

Weible for carrying a concealed weapon and that "[a] police officer is not required to weigh and evaluate the truth of alleged affirmative defenses to a crime before he may act upon probable cause to arrest and charge a defendant." *Id.* at *3.

We suggest, first of all, that an unpublished opinion of an intermediate federal or state court of appeals carries no precedential weight, although it may have persuasive value. More importantly, however, as the district court noted in this matter, *Weible* does not foreclose a determination that the defendants violated the Dietrichs' constitutional right to be free from false arrests. The police officers in *Weible* had no way of determining, prior to the arrest of the plaintiff, whether Weible could assert a statutory affirmative defense to the charge of carrying a concealed weapon. By contrast, all the defendants in this matter knew, prior to arresting the Dietrichs, that the plaintiffs were legitimately armed for the purpose of conducting a business that was particularly susceptible to criminal attack. *See* O.R.C. § 2923.12(C)(1). In fact, affidavits submitted by the defendants established their knowledge of the fact that the Dietrichs would be armed because of the security requirements of their courier positions.

For example, although defendant Barcus initially claimed that he did not expect the plaintiffs to be armed during their money run, he also conceded he did know, prior to arresting the plaintiffs, "that the contract[s] for some of the businesses require that the person during the money transports from the business to the bank and back must be armed security." Defendant Lang, in his deposition, also admitted knowledge of the fact that the plaintiffs were engaged in the business of carrying money for business customers. He further stated that he acquired that knowledge from Chief Burrows himself, who informed Lang of the Dietrichs' activities approximately one week prior to the arrests at issue in this matter. Finally, defendant James Jenkins testified by deposition that he also knew, prior to September 5, 1991, that the plaintiffs' business involved providing armed escort services for the transporting of currency from one site to

another. Such knowledge on the part of each of the remaining defendants highlights the crucial distinction between this case and the situation presented to the Ohio Court of Appeals in *Weible.* Unlike the officers in that case, who could not have known of Weible's justification for carrying a concealed weapon prior to her arrest, the officers in this case had full knowledge of facts and circumstances that conclusively established, at the time of the Dietrichs' arrests, that the plaintiffs were justified—by statute—in carrying concealed weapons during their work. Consequently, none of the defendants had probable cause at the time of the arrests to believe the plaintiffs had violated, were violating, or were about to violate the law. The district court thus properly ruled that the Dietrichs had made out a valid Fourth Amendment claim.

### B. Qualified Immunity Defense

The defendants nevertheless argue that they were entitled to summary judgment on the plaintiffs' Fourth Amendment claim because the doctrine of qualified immunity protects them from suit. This court reviews claims of qualified immunity *de novo.* *See Thomas v. Whalen,* 51 F.3d 1285, 1289 (6th Cir.1995).

As a general principle, "government officials performing discretionary functions enjoy qualified immunity from liability for performance of their official duties." *Id.* Whether such an official may nevertheless be held personally liable for an allegedly unlawful action involves an inquiry into the "objective legal reasonableness" of the action. *See Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). If the constitutional right "the government official allegedly violated was clearly established at the time of the challenged conduct, 'the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.'" *Thomas,* 51 F.3d at 1289 (quoting *Harlow,* 457 U.S. at 818–19, 102 S.Ct. 2727).

When determining whether a right is "clearly established," we look "first to decisions of the Supreme Court, then to decisions of this Court and other courts within our circuit, and finally to decisions of other circuits." *Daugherty v. Campbell,* 935 F.2d 780, 784 (6th Cir.1991). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). As the Supreme Court explained, however, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* (citations omitted).

The defendants contend that it was not "clearly established" in 1991 that a police officer must analyze the validity of an arrestee's claim of an affirmative defense to a charge of carrying a concealed firearm before effecting an arrest for that crime. Such an argument, however, misstates the relevant inquiry for the court in this case. The law has been clearly established since at least the Supreme Court's decision in *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925), that probable cause determinations involve an examination of all facts and circumstances *within an officer's knowledge at the time of an arrest.*

The evidence before the district court in this case was uncontroverted that when the defendants prepared to arrest the Dietrichs for carrying concealed weapons, the officers knew who the plaintiffs were and also were fully aware that the plaintiffs were carrying firearms for the purpose of protection in the course of their occupations. Consequently, the defendants knew, or should have known, that under the circumstances presented, the plaintiffs were not engaged in activities violating the prohibitions of O.R.C. § 2923.12. Even in 1991, the law was clearly established that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual. The district court, therefore, appropriately concluded that the defendants were not entitled to qualified immunity from pros-

ecution on the Dietrichs' Fourth Amendment claim.

### III. Substantive Due Process Claim

▆ The plaintiffs' complaint also alleges that the arrests by the defendants deprived the Dietrichs of their substantive due process rights guaranteed by the Fourteenth Amendment to the United States Constitution. The district court correctly granted summary judgment to the defendants on this claim, however, because the plaintiffs' challenge to their arrests may be more specifically analyzed under Fourth Amendment law. As the Supreme Court has stated, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

### IV. First Amendment Claim

▆ Prior to trial, the plaintiffs moved to amend their original complaint to claim that the defendants arrested them in retaliation for exposing the fact that members of the Perkins Township police force served as armed couriers using township vehicles and wearing police uniforms. They attached a copy of the amended complaint to their motion, which the district court granted some three months later. But the Dietrichs never actually filed the amended pleading with the district court clerk, and for this reason, the defendants now argue—for the first time—that the district court should therefore have granted summary judgment in their favor on this First Amendment cause of action.

In response, the plaintiffs first insist that the defendants may not raise objections to the alleged improper filing of the amended complaint for the first time on appeal. They further argue that the defendants themselves treated the amendment as filed by specifically asking the district court to grant the officers summary judgment on the retaliation claim. We agree and, pursuant to the provi-

sions of Fed.R.Civ.P. 15(b), treat this claim as if the complaint had been amended to conform to the evidence.

On the merits, the defendants first argue they are entitled to summary judgment on the First Amendment claim because any action taken against the Dietrichs was supported by probable cause to arrest. For the reasons already stated in this opinion, such an argument cannot be sustained.

▆ The defendants next insist that they are entitled to qualified immunity on the plaintiffs' First Amendment retaliation claim. We note, however, that Supreme Court decisions rendered long before the actions at issue in this case recognize that government actions may not retaliate against an individual for the exercise of protected First Amendment freedoms. *See, e.g., Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 283–84, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Moreover, as determined by the district court in this matter, "[s]tatements by a taxpaying citizen voicing concern about the potential liability of his municipality, if an arguably questionable practice continues[,] is a classic matter of public concern" entitled to First Amendment protection. The district court thus appropriately denied summary judgment to the defendants on the Dietrichs' first Amendment retaliation claim as well.

### CONCLUSION

By September 1991, the law in Ohio—and, for that matter, in the rest of the United States—was already clearly established that warrantless arrests made without probable cause are repugnant to the precepts embodied in the Fourth Amendment to the United States Constitution. Furthermore, the principle was beyond dispute at that time, as it is now, that probable cause to justify an arrest "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. at 37, 99 S.Ct. 2627. The district court in this matter correctly determined that the defen-

dant officers who arrested the Dietrichs for carrying concealed weapons knew that the plaintiffs were legitimately carrying firearms for protective purposes and had not engaged in, were not engaged in, nor were about to engage in criminal activity. The arrest of the plaintiffs thus violated Fourth Amendment principles, and the defendants were, therefore, appropriately denied summary judgment on the plaintiffs' false arrest claims.

We further conclude that the district court properly granted summary judgment to the defendants on the Dietrichs' substantive due process claim and properly denied the defendants summary judgment on the plaintiffs' First Amendment claim. Therefore, we AFFIRM the judgment of the district court.