[Cite as *Edvon v. Morales*, 2018-Ohio-5171.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   106448

**RICHARD EDVON**

PLAINTIFF-APPELLEE

vs.

**ALEJANDRO MORALES, ET AL.**

DEFENDANTS-APPELLANTS

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-17-875411

**BEFORE:**  Keough, J., Boyle, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:**  December 20, 2018

**ATTORNEYS FOR APPELLANTS**

Todd M. Raskin
David M. Smith
Frank H. Scialdone
Mazanec Raskin & Ryder Co., L.P.A.
100 Franklin's Row
34305 Solon Road
Cleveland, Ohio   44139


**ATTORNEYS FOR APPELLEE**

Raymond Vasvari
K. Ann Zimmerman
Vasvari & Zimmerman
1100 Erieview Tower
1301 East Ninth Street
Cleveland, Ohio   44114

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendants-appellants, Parma Heights police officers John Vinkler, Jack Darnell, Adam Sloan, and Ron Felkonis (collectively "appellants" or "the officers") appeal the trial court's in-part denial of their motion for summary judgment.   For the reasons that follow, we reverse and remand with instructions for the trial court to enter judgment in favor of appellants.

## I.   Underlying Facts

{¶2} In August 2014, plaintiff-appellee, Richard Edvon, lived with his girlfriend and two young children, one of whom is autistic.   According to Edvon, he was not working because his autistic son required "a lot of care," necessitating him to "be home 24 hours a day with him."

{¶3} Around 4:00 p.m. on August 12, 2014, Edvon was in his apartment with his sons when he heard arguing in the hallway that escalated after a few minutes.   Edvon stated that he

heard a girl screaming for help and for someone to call the police. When he looked through the peephole of his door, he saw "what appeared to be an [adult man] pulling [a girl] away from the door [to the apartment across the hallway]." Edvon stated "there [were] a couple big bangs and [then] * * * the screams turned muffled like someone was covering her face or something." Edvon stated that he "put [his] kids in the far room and shut the door and told them to stay there." He said that he tried looking for his phone to call the police, but that the "screams got so loud and desperate" that he felt the need to "step in." As a result, he grabbed his loaded Smith & Wesson M&P .40 caliber — for which he had a concealed-carry permit — opened his apartment door, and pointed the gun at the man, who was later identified as his neighbor, Alejandro Morales.

{¶4} Edvon said the "man [was] over top [of the] girl against the wall of the hallway right next to [his] door," and that the man "had his arm wrapped in her hair [and] [h]is left arm was over her mouth and her face and her nose[.]" Edvon said he told the man, "Get off of her[,]" but that the man "kept holding onto her hair" and "did not let go." According to Edvon, the man told him that the girl was his daughter and that he was trying to stop her from running away. Edvon said he responded that he did not know who the man was and to let the girl go.[1] The man told Edvon to call the police, who would tell him that it was his daughter, but Edvon explained that he could not find his phone. When Edvon told the man to call the police on the man's own cell phone, the man refused and said "[he would] go inside. We go inside. I'll take care of her. We'll be okay. Everything will be okay. I'm sorry. I'm sorry."

---

[1] In his complaint, Edvon explains that he did not know the Moraleses despite living directly across the hallway "because of the schedules and comings-and-goings of the parties[.]" He also stated that at the time of the incident, he did not "know * * * the identities nor the relationship between the Morales[es]."

{¶5} At that point, Alejandro's two other daughters walked down the hallway and told Edvon that the girl was Alejandro's daughter and that she was "a problem child." Edvon said that the other individuals began speaking in another language, but that it seemed like they were arguing with one another. Edvon told them "You guys just need to take care of this in your apartment. Take care of this. This is not my business[.]" According to Edvon, they apologized, Alejandro shook his hand, and they all went inside their apartment across the hallway.

{¶6} Parma Heights police officers Vinkler, Darnell, Sloan, and Felkonis responded to a disturbance call at the apartment complex. When they arrived, they spoke with the Morales family. Officers Felkonis and Vinkler spoke with the then-teenage daughter, Regine, and Officers Darnell and Sloan spoke with the father, Alejandro. The officers testified at deposition that their department had responded to the Morales apartment on prior occasions for complaints about Regine, referring to her as an "habitual runaway." Both Alejandro and Regine told the officers that they had been wrestling with one another in the hallway because Regine was trying to run away.

{¶7} During the course of their investigation, the officers learned that the neighbor across the hall, later identified as Edvon, pointed a gun at them during the altercation in the hallway. The Moraleses stated that they wished to prosecute the neighbor for his actions. Based on that information, the officers walked across the hall to investigate the allegation.

{¶8} Edvon opened the door and the officers observed two small children in the apartment. According to Edvon, he did not let the officers inside his apartment, which caused the officers to get upset. Instead, Edvon walked into the hallway and locked the apartment door behind him, leaving his children inside. Upon questioning, Edvon admitted that he pointed his

gun at Alejandro after he refused to let go of the girl. He further advised the officers that he had a valid conceal and carry permit. Edvon stated at deposition that he tried to explain his justification for doing so, but the officers would not hear his side of the story.

{¶9} The officers admitted that Edvon was cooperative and there were not any discrepancies in the version of events between the parties. During the discussion, the officers learned that Edvon's two small children were present inside the apartment when he opened the door and confronted Alejandro with the gun. The officers admitted, however, that they did not know where the children were during the "gun-pointing" incident. According to Edvon, the officers told him he was being neglectful by locking his unattended children inside the apartment while he was outside in the hallway speaking with the officers.

{¶10} Officer Felkonis stated that based on the admission by Edvon that he pointed a gun at the Moraleses and that the Moraleses wanted to prosecute him for doing so, they arrested Edvon for aggravated menacing. Alejandro subsequently signed the complaint that charged Edvon with aggravated menacing. Edvon was also charged with child endangering after Officers Vinkler and Felkonis returned to the police station and discussed the facts and circumstances with their supervisor, Sergeant Cyril.

{¶11} In June 2015, all charges against Edvon were dismissed without prejudice.

## II. Procedural Background

{¶12} In 2015, Edvon sued the Moraleses and the officers. The complaint was voluntarily dismissed and in February 2017, Edvon refiled his complaint setting forth claims for defamation against the Moraleses, and malicious prosecution against the officers in both their official and individual capacities. Edvon alleged that he "suffered, and continues to suffer, damages including having been effectively evicted from his apartment, the costs associated with

relocation and his criminal defense, humiliation, emotional pain and suffering, emotional distress and mental anguish, and loss of reputation and standing in the community."

{¶13} The officers answered the complaint and set forth affirmative defenses, including a claim of immunity under R.C. Chapter 2744. Following discovery, the officers filed a joint motion for summary judgment asserting that they were entitled to statutory immunity in both their official and individual capacities.

{¶14} The trial court granted summary judgment in part on "the basis of immunity under R.C. 2744.02 on [Edvon's] claims against the [officers] in their official capacties[,]" but denied the officers' motion in part "on [Edvon's] claims against [them] in their individual capacities."

{¶15} Appellants now appeal, raising as their sole assignment of error that the trial court erred when it denied their motion for summary judgment, finding that they were not entitled to individual immunity under R.C. 2744.03(A)(6).[2]

### III. Summary Judgment Standard

{¶16} An appellate court reviews a trial court's decision to grant summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 192, 699 N.E.2d 534 (8th Dist.1997).

{¶17} The party moving for summary judgment bears the burden of demonstrating that no material issues of fact exist for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). The moving party bears the initial responsibility of informing the trial court of the

---

[2] Edvon did not appeal the trial court's grant of summary judgment to the officers on their claim of immunity in their official capacities. Further, this appeal does not concern Edvon's claims against the Moraleses.

basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Id*. After the moving party has satisfied this initial burden, the nonmoving party has a reciprocal duty to set forth specific facts by the means listed in Civ.R. 56(C) showing that there is a genuine issue of material fact. *Id*.

{¶18} Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998).

## IV. Political Subdivision Immunity

{¶19} Generally, individual employees of a political subdivision, such as the officers in this case, are immune in their individual capacities from civil actions "to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function[.]" R.C. 2744.03(A).[3]   Therefore, we presume that an employee of a political subdivision has immunity. *Knox v. Hetrick*, 8th Dist. Cuyahoga No. 91102, 2009-Ohio-1359, ¶ 21.

{¶20} There are, however, exceptions to this immunity.   Employees of a political subdivision are not entitled to immunity if

> (a) [t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) [t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or] (c) [c]ivil liability is expressly imposed upon the employee by a section of the Revised Code.

---

[3] The parties do not dispute that the city of Parma Heights is a political subdivision under R.C. 2744.01(F).

R.C. 2744.03(A)(6).

{¶21} Each officer's conduct is typically analyzed separately when determining whether immunity applies. *See Estate of Graves v. Circleville*, 179 Ohio App.3d 479, 2008-Ohio-6052, 902 N.E.2d 535, ¶ 29-35 (4th Dist.) (analyzing whether the two officers and the dispatcher were entitled to immunity separately). However, the evidence in this case reveals that all of the officers were involved in at least the arrest of Edvon and, therefore, we can analyze the officers' immunity collectively.

{¶22} Edvon did not allege in the trial court — and does not allege here — that the officers were acting outside the scope of their employment as police officers. Instead, he contends that the officers acted with a malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶23} The trial court found that there was a genuine issue of material fact as to Edvon's malicious prosecution claim against the officers — specifically, whether the officers' decision to file charges against Edvon for aggravated menacing and child endangering was made with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶24} To sustain a claim of malicious prosecution, one must prove "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 144, 559 N.E.2d 732 (1990). "[I]n an action for malicious prosecution, the want of probable cause is the gist of the action. If such be proven, the legal inference may be drawn that the proceedings were actuated by malice." *Melanowski v. Judy*, 102 Ohio St. 153, 131 N.E. 360 (1921), paragraph one of the syllabus. Accordingly, the issue becomes whether the officers had

probable cause to arrest and subsequently charge Edvon for aggravated menacing and child endangering.

{¶25} "Probable cause exists where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed." *Knox*, 8th Dist. Cuyahoga No. 91102, 2009-Ohio-1359, ¶ 46. These facts and circumstances must exist at the time of arrest and charge, not in hindsight or upon reflection. *See, e.g., State v. Wac*, 68 Ohio St.2d 84, 88, 428 N.E.2d 428 (1981) (hindsight neither vindicates nor vitiates the actions of the arresting officer); *State v. Pfeiffer*, 12th Dist. Butler No. CA2003-12-329, 2004-Ohio-4981, ¶ 22 (offender's explanation for why he violated a traffic law does not obviate the conclusion that the officer had probable cause to believe a violation occurred). Therefore, if an officer has a real belief and reasonable grounds for the belief, probable cause exists despite the ultimate outcome of the case. *State v. Vance*, 2d Dist. Clark No. 2246, 1987 Ohio App. LEXIS 6972, 7 (May 11, 1987); *Bock v. Cincinnati*, 43 Ohio App. 257, 183 N.E. 119 (1st Dist.1931); *Ryan v. Conover*, 59 Ohio App. 361, 18 N.E.2d 277 (1st Dist.1937); *State v. Gross*, 7th Dist. Mahoning No. 01-C.A.-115, 2002-Ohio-3465, ¶ 35 (the accused does not actually have to commit a crime for the arresting officer to possess probable cause).

## A. Aggravated Menacing

{¶26} The officers argue that no genuine issue of material fact exists regarding whether they acted with malice, in bad faith, or in a reckless or wanton manner because they had probable cause to arrest Edvon for aggravated menacing based on Alejandro's and Regine's statements and Edvon's admission that he pointed a gun at them. In response, Edvon argues that there is a

genuine issue of material fact as to whether the officers acted with malice, in bad faith, or in a reckless or wanton manner because they "refused to hear his side of the story" or explore whether Edvon's actions were justified by the "defense of others" defense. We disagree.

{¶27} R.C. 2903.21(A), the aggravated menacing statute, states, "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person * * * or the other person's immediate family." Accordingly, "[t]he charge of aggravated menacing is subjective in nature. It is based upon what the accused caused another to believe." *Finn v. Amelia*, 12th Dist. Clermont No. CA88-10-073, 1989 Ohio App. LEXIS 1030, *5 (Mar. 27, 1989).

{¶28} In this case, both Alejandro and Regine gave written statements on the day of the incident that they wished to prosecute Edvon because he caused them to believe that he would cause them serious physical harm when he exited his apartment and knowingly pointed his firearm at them — two people Edvon admittedly did not know. Their statements, along with the admission by Edvon that he pointed his gun at them, gave the officers probable cause to arrest and charge Edvon for aggravated menacing. Alejandro, as the affiant, also signed the aggravated menacing complaint against Edvon. Accordingly, the officers satisfied their initial burden under Civ.R. 56.

{¶29} Edvon does not create a genuine issue of material fact by asserting that the officers "refused to hear his side of the story" or explore whether Edvon's actions were justified by the "defense of others" defense. "[O]fficers do not have to conduct pre-arrest quasi-trials in every situation wherein the subject asserts a purported legal excuse for his actions." *Painter v. Robertson*, 185 F.3d 557, 571 (6th Cir.1999), fn. 21.

**{¶30}** Moreover, whether Edvon has a potential affirmative defense does not vitiate probable cause. While "a police officer 'may not ignore information known to him which proves that the suspect is protected by an affirmative legal justification[,]'" "when a suspect asserts an affirmative defense, this does not automatically vitiate probable cause. The officer is not required to accept the explanation without question[.]" *Frodge v. Newport*, 501 Fed.Appx. 519, 527 (6th Cir.2012)*,* quoting *Fridley v. Horrighs,* 291 F.3d 867, 873 (6th Cir.2002). "Even if the circumstances suggest that a suspect may have an affirmative defense, if a reasonable officer would not 'conclusively know' that the suspect is protected by the defense, then [the officer] is free to arrest the suspect provided there is probable cause to do so." *Fridley* at *id*.

**{¶31}** It is well established that when making an arrest, police officers are not required to "inquire into facts and circumstances in an effort to discover if the suspect had an affirmative defense." *Id*.; *State v. Fields*, 4th Dist. Athens No. 96CA1742, 1996 Ohio App. LEXIS 5558, 22-23 (Dec. 2, 1996), citing *State v. Williams*, 9th Dist. Summit No. 16418, 1995 Ohio App. LEXIS 4898 (Nov. 1, 1995), and *Weible v. Akron*, 9th Dist. Summit No. 14878, 1991 Ohio App. LEXIS 2179 (May 8, 1991) ("[A]n officer is not required to evaluate the applicability of an affirmative defense before acting upon probable cause."); *Jones v. Washington*, 67 Ohio App.3d 176, 183, 586 N.E.2d 228 (6th Dist.1990) ("[T]he raising of an affirmative defense is not a bar to the filing of a criminal complaint if probable cause exists to file the charges.").

**{¶32}** Although Edvon may have believed that Regine was in danger, the Moraleses advised the officers that Regine was attempting to run away. Additionally, the officers' report indicated that Alejandro was preventing his known habitual-runaway daughter from leaving the apartment. Accordingly, the officers had information at the time of the incident that Regine caused the incident; thus the defense-of-others defense might reasonably be unavailable. *See,*

*e.g., State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 38 (if the person aided is the one at fault in creating the affray, the actor is not justified in the use of force). Therefore, Edvon's assertion that he *possibly* had an affirmative defense does not create a genuine issue of material fact to survive summary judgment on the issue of whether the officers lacked probable cause.

{¶33} The dissent attempts to create a genuine issue of material fact by completely ignoring the undisputed fact that the Moraleses wished to prosecute Edvon for aggravated menacing and that Alejandro actually was the complaining party who signed the complaint against Edvon. These undisputed facts reveal that even if the officers did not arrest Edvon for aggravated menacing, the Moraleses were, and actually did, pursue charges against Edvon for his admitted actions of pointing a loaded gun at them.

{¶34} Accordingly, based on the evidence and deposition testimony, the officers had probable cause to arrest and charge Edvon for aggravated menacing.

**B. Child Endangering**

{¶35} The officers contend that no genuine issue of material fact exists regarding whether they acted with malice, in bad faith, or in a reckless or wanton manner because they had probable cause to charge Edvon with child endangering based on their observations, and Edvon's admission, that he pulled a gun on an unknown risk and danger in the hallway while he was caring for his children inside the apartment.

{¶36} In response, Edvon contends that a genuine issue of material fact exists because the officers admittedly did not know where the children were when he confronted the Moraleses with his gun in the hallway, and his children were placed in the back bedroom before he retrieved his firearm and confronted the Moraleses. Edvon maintains that at no time were his children in any

danger. He asserts that the officers only charged him with child endangering because he denied the officers access to his apartment. Edvon stated at deposition that he refused to let the officers inside his apartment, but instead talked with them in the hallway after locking his children inside the apartment.

{¶37} Pursuant to R.C. 2919.22, "no person, who is the parent * * * of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." Put simply, to establish child endangering, the state must show that a defendant "(1) recklessly (2) created a substantial risk to the health or safety of one or more of his children (3) by violating a duty of care, protection[,] or support." *Cleveland Hts. v. Cohen*, 8th Dist. Cuyahoga No. 101349, 2015-Ohio-1636, ¶ 25.

{¶38} In this case, the officers had probable cause to charge Edvon for child endangering based on the circumstances known to them at the time of the incident. Edvon's attempt to justify his actions or prove that his children were not in danger does not negate an officer's probable cause to issue a charge of child endangering. We are mindful that probable cause is not the same as proof beyond a reasonable doubt. *See Huber v. O'Neill*, 66 Ohio St.2d 28, 30, 419 N.E.2d 10 (1981). What the city must prove to secure a conviction against Edvon is not the same as whether "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed." *Knox*, 8th Dist. Cuyahoga No. 91102, 2009-Ohio-1359, ¶ 46.

{¶39} As Officer Vinkler stated at deposition, Edvon was charged with child endangering because:

[Edvon] felt that he needed to bring a gun out into the hallway for that said commotion not knowing what was going on or what was happening. So they could have easily pulled the gun on him, shot him or started firing bullets back at him. So he created a risk that if he was to be injured, he couldn't take care of his children.

Admittedly, the officers said at deposition that they did not know where Edvon's children were at the time of the incident or when he opened the door and pointed the gun at the Moraleses. But according to the police investigative report that was drafted on the day of the incident and arrest, Officer Vinkler stated:

Edvon said he heard a disturbance in the hallway and heard someone yelling, "Help call the police." Edvon said that instead of calling the police he grabbed his gun and pointed it at Alejandro and Regine. He said that he had his two children inside his apartment when he opened his door and pointed the gun at them. His two children are * * * age 6 * * * and * * * age 3. The door was open and the children were playing right behind Richard Edvon when this incident occurred. Richard Edvon was placed under arrest after speaking with him.

{¶40} The fact that neither Edvon nor his children were harmed or that the Moraleses did not overtake him or his gun does not vitiate probable cause for child endangering. The question the officers faced at the time was whether Edvon recklessly created a substantial risk to the health or safety of his children by violating a duty of care or protection when he opened the door of his apartment to point his weapon at an unknown male fighting with an unknown female in the hallway. Based on the officers' observations and the facts and circumstances known to them at the time, the officers had probable cause to charge Edvon with child endangering. Moreover, Officers Vinkler and Felkonis testified that Edvon was only charged with child endangering after returning to the police station and conferring with and relaying the facts and circumstances to their sergeant, who was not named as a party defendant.

{¶41} The dissent takes issue that the majority opinion does not construe the evidence in the light most favorable to Edvon. However, the only evidence Edvon offers is based on

speculation and conjecture. "'Mere speculation and unsupported conclusory assertions are not sufficient' to meet the nonmovant's reciprocal burden under Civ.R. 56(E) to withstand summary judgment." *Wilimington Trust N.A. v. Boydston*, 8th Dist. Cuyahoga No. 105009, 2017-Ohio-5816, ¶ 31, quoting *Loveday v. Essential Heating Cooling & Refrigeration, Inc.*, 4th Dist. Gallia No. 08CA4, 2008-Ohio-4756, ¶ 9. Accordingly, Edvon's belief, without more, is insufficient to create a genuine issue of material fact to defeat summary judgment.

{¶42} Based on the undisputed evidence, Edvon's admissions, and relevant legal standards and rules of law, probable cause existed to charge him with both aggravated menacing and child endangering. Accordingly, Edvon's claim for malicious prosecution fails as a matter of law. *Barnes v. Meijer Dept. Store*, 12th Dist. Butler No. CA2003-09-246, 2004-Ohio-1716, citing *Davis v. Peterson*, 9th Dist. Summit No. 16883, 1995 Ohio App. LEXIS 1284 (Mar. 29, 1995). The officers are entitled to summary judgment on their individual immunity claims; thus, the trial court erred in denying the officers' motion for summary judgment in its entirety. The assignment of error is sustained.

{¶43} Judgment reversed and remanded with instructions for the trial court to enter judgment in favor of the officers.

It is ordered that appellants recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

LARRY A. JONES, SR., J., CONCURS;
MARY J. BOYLE, P.J., DISSENTS WITH SEPARATE OPINION


MARY J. BOYLE, P.J., DISSENTING:

{¶44} Because the majority weighs the evidence, determines credibility, and resolves genuine issues of material fact in favor of the moving parties instead of determining whether genuine issues of material fact exist as the law requires, I respectfully dissent.

{¶45} The majority undermines well-established summary judgment law that cautions the grant of summary judgment, demands that the trial court construe evidence in a light most favorable to the nonmoving party, and requires denying a motion for summary judgment when conflicting facts and inferences exist. Considering the conflicting nature of Edvon's version of events and the officers' versions of events and looking at the evidence in a light most favorable to Edvon, as we are required to do, it is obvious from the record that genuine issues of material fact exist as to whether the officers had probable cause to charge him with child endangering and aggravated menacing, therefore precluding summary judgment. For reasons more fully explained below, I would find that genuine issues of material fact exist when deciding the officers' claims for individual immunity, overrule the officers' assignment of error, and affirm the trial court's denial of the officers' motion for summary judgment as to their individual immunity.

**Standard of Review**

{¶46} "While summary judgment is a beneficial procedure aiding in the swift administration of justice, it must also 'be used cautiously and with the utmost care so that a litigant's right to a trial * * * is not usurped in the presence of conflicting facts and inferences.'"

*Fifth Third Mtge. Co. v. Perry*, 4th Dist. Pickaway No. 12CA13, 2013-Ohio-3308, ¶ 35, quoting *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 467 N.E.2d 1378 (6th Dist.1983). "'It is imperative to remember that the purpose of summary judgment is not to try issues of fact, but rather to determine whether triable issues of fact exist.'" *Id.*, quoting *Viock*.

{¶47} Whether an employee of a political subdivision acted with malice, in bad faith, or in a reckless or wanton manner, is generally a question of fact for the jury. *See Gilbert v. Cleveland*, 8th Dist. Cuyahoga No. 99708, 2013-Ohio-5252, ¶ 15, quoting *Hunter v. Columbus*, 139 Ohio App.3d 962, 746 N.E.2d 246 (10th Dist.2000) ("Because the line between willful or reckless misconduct, wanton misconduct, and ordinary negligence can be a fine one, 'the issue of whether conduct was willful or wanton should be submitted to the jury for consideration * * * when reasonable minds might differ as to the import of the evidence.'").

{¶48} Because the question of whether an employee acted with bad faith or in a malicious or wanton manner "explicitly focuses on the employee's state of mind[,]" "[i]t does not readily lend itself to summary disposition." *Chesher v. Neyer*, 477 F.3d 784, 797 (6th Cir.2007); *Condit v. Clermont Cty. Rev.*, 93 Ohio App.3d 166, 174, 638 N.E.2d 96 (12th Dist.1994), citing *Hutchinson v. Proxmire*, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979). "[Q]uestions of fact regarding immunity are enough to overcome summary judgment." *Knox v. Hetrick*, 8th Dist. Cuyahoga No. 91102, 2009-Ohio-1359, ¶ 37.

> While the issue of immunity is a question of law, * * * the trial court is required to consider specific facts of the case in order to resolve the issue. When an issue turns upon the credibility of a witness because his testimony must be believed to resolve the issue and the surrounding circumstances place the credibility of the witness in question, the matter should be resolved by the trier of fact.

*Lowry v. State Hwy. Patrol*, 10th Dist. Franklin No. 96API07-835, 1997 Ohio App. LEXIS 679, 13 (Feb. 27, 1997). "Thus, a trial court may not grant summary judgment on the basis of R.C.

2744.03(A)(6) immunity unless * * * reasonable minds could conclude only that the employee did not act in a wanton or reckless manner." *Id*.

**Child Endangerment**

{¶49} Turning first to the child endangerment charge, Edvon's account of the events leading to the officers charging him with child endangering differs greatly with the version set forth by the officers.

{¶50} According to Edvon, the officers wanted to speak to him inside his apartment. Edvon told police that he would come outside of his apartment to speak with them, but that they could not enter his apartment. Edvon said the police "were very unhappy [because] [t]hey didn't want to do it outside." He said, "They were repeatedly asking me why I want to be outside. They put their foot in the door. I told them not to enter, but they put their foot in the door."

{¶51} Edvon said that when he went into the hallway and closed the door to his apartment, one of the officers asked him "why [he was] going to leave [his] kids inside of the apartment and that it is illegal to do so, that [he was] endangering [his] kids by leaving them in the apartment." He said he told the officers, "I'm out here just talking to you guys. I have my keys right here. They're just right inside the apartment." He said one of the officers told him "That doesn't matter. That's neglect." Edvon went on to describe his interaction with the officers and their questioning as follows:

> I was being barraged by two officers at once. * * * [T]he other officer who was asking me about my children told me that I need to answer him or they're going to place me under arrest, and I said "I'm getting asked by two people at once. I can't talk to both of you." While I was saying that to the other officer, the other officer who was asking me about what happened demanded that I answer him or I'm going to be placed under arrest. So I have two officers demanding that I answer them on different subjects or that I will be placed under arrest.

**{¶52}** The officers deny Edvon's account and describe their interaction and basis for charging Edvon with child endangering much differently. Officer Vinkler stated that they charged Edvon for child endangering because

> [Edvon] felt that he needed to bring a gun out into the hallway for that said commotion not knowing what was going on or what was happening. So they could have easily pulled the gun on him, shot him or started firing bullets back at him. So he created a risk that if he was to be injured, he couldn't take care of his children.

Officer Vinkler noted, however, that Edvon was not injured and that the Moraleses did not take his gun.

**{¶53}** Officer Felkonis explained that Edvon endangered his children "[b]y opening his door to an unknown danger, by entering a weapon into the equation, and not supervising his children." When asked what he meant when he said that Edvon was not supervising his children, Officer Felkonis said, "He's not paying attention to the children because he's focused on pointing a loaded gun at two people in the hallway." The following exchange also occurred during Officer Felkonis's deposition:

> Q. So part of the risk that he created to his children was these unknown people who were causing trouble in the hallway might have disarmed him, come into the apartment and hurt him or the children?
> A. Or grabbed the gun and started shooting.
>
> Q. And he had no way of knowing whether those people were armed when he opened the door?
>
> A. Correct. Unless he looked through the peephole. I can't speak to what he saw.

**{¶54}** All of the officers said that they did not know where Edvon's children were at the time of the incident or, specifically, when Edvon opened his door and pointed the gun at the Moraleses. Edvon, however, said that he safely and securely placed his children in the back room and closed the door before he took out his handgun and confronted the situation in the hallway.

**{¶55}** With those conflicting accounts in mind and based on the majority's conclusion, it is important to reiterate black-letter law that states,

> In summary judgment proceedings, a court may not weigh the evidence or judge the credibility of sworn statements, properly filed in support of or in opposition to a summary judgment motion, and must construe the evidence in favor of the nonmoving party. *See Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). * * * When trial courts choose between competing affidavits and testimony, they improperly determine credibility and weigh evidence contrary to summary judgment standards. *Finn v. Nationwide Agribusiness Ins. Co.*, 3d Dist. Allen No. 1-02-80, 2003-Ohio-4233, P 39.

*Telecom Acquisition Corp. I v. Lucic Ents.*, 8th Dist. Cuyahoga No. 102119, 2016-Ohio-1466, ¶ 93.

**{¶56}** Further, as the Ohio Supreme Court recognized

> [c]redibility issues typically arise in summary judgment proceedings when one litigant's statement conflicts with another litigant's statement over a fact to be proved. Since resolution of the factual dispute will depend, at least in part, upon the credibility of the parties or their witnesses, summary judgment in such a case is inappropriate.

*Turner v. Turner*, 67 Ohio St.3d 337, 341, 617 N.E.2d 1123 (1993).

**{¶57}** The majority ignores those long-standing and well-understood principles and instead improperly resolves the conflicting accounts between the parties and weighs the evidence against Edvon, the nonmoving party.

**{¶58}** Here, Edvon provided evidence that the officers did not arrest him because he pointed a gun at the Moraleses with his children present, but instead because he was endangering his children by leaving them inside his apartment alone while he spoke with officers immediately outside his apartment. In fact, according to Edvon, the officers told Edvon that he was endangering his children before he admitted to pointing the gun at the Moraleses. Edvon testified that the officers charged him with child endangering only because they were unhappy that he denied their request to come inside his apartment. But the majority looks the other way.

In fact, in its entire analysis of the child endangering charge, the majority does not discuss Edvon's account or evidence, only discussing the evidence set forth by the police officers that supports its conclusion.

{¶59} To summarize, the majority adopts the moving party's version of events, ignores evidence tending to establish that the officers acted in bad faith or in a wanton or malicious manner, and bases its reversal on its finding that the officers had probable cause to arrest Edvon for child endangering. Yet, the only way that the majority can reach that finding is by weighing the evidence and determining that the officers' version of events is more credible than Edvon's version of events. This is certainly not proper to do at this stage of the proceedings.

{¶60} Therefore, after construing all of the evidence in favor of Edvon, as Civ.R. 56 requires us to do, I would conclude that genuine issues of material fact exist as to whether the officers are entitled to individual immunity. I would conclude that the trial court properly found genuine issues of material fact regarding whether the officers acted in bad faith in a malicious or wanton manner and that Edvon deserves a hearing before a trier of fact on that important issue. As a result, specifically concerning the officers' decision to charge Edvon with child endangering, I would affirm the trial court's denial of the officers' motion for summary judgment based on their claim of individual immunity.

**Aggravated Menacing**

{¶61} The second charge that the officers filed against Edvon was for aggravated menacing in violation of R.C. 2903.21(A). This charge does not raise the same factual concerns as those underlying the child endangering charge. In fact, all of the facts underlying the charge for aggravated menacing are undisputed by both parties.

{¶62} Nevertheless, I disagree with the majority's conclusion that the officers had probable cause to arrest and charge Edvon for aggravated menacing.

{¶63} In *Estate of Dietrich v. Burrows*, 167 F.3d 1007 (6th Cir.1999), the Dietrichs (father and son) worked as private armed money couriers. The father was also a full-time police officer and had recently spoken to a number of officials about his side job. One day, while driving during one of their shifts as money couriers, the Dietrichs noticed they were being followed by a police officer, who eventually pulled them over. A number of officers approached the car and asked whether the Dietrichs were carrying concealed weapons, which they both admitted they were. As a result, the officers arrested the Dietrichs "on weapons charges." *Id.* at 1010. The prosecutor eventually dropped the charges, and the Dietrichs filed suit against the officers under 42 U.S.C. 1983 and under state law for false arrest and intentional infliction of emotional distress. The officers moved for summary judgment under the doctrine of qualified immunity, but the trial court denied the motion, and the officers appealed.

> On review, the Sixth Circuit found that the officers knew prior toarresting the Dietrichs, that the plaintiffs were legitimately armed for the purpose of conducting a business that was particularly susceptible to criminal attack. * * * In fact, affidavits submitted by the defendants established their knowledge of the fact that the Dietrichs would be armed because of the security requirements of their courier positions.

*Id.* at 1011. The court also stated, "[T]he officers in this case had full knowledge of facts and circumstances that *conclusively established*, at the time of Dietrichs' arrests, that the plaintiffs were justified — by statute — in carrying concealed weapons during their work." (Emphasis added.) *Id.* at 1012. The court concluded, "Consequently, none of the defendants had probable cause at the time of the arrests to believe the plaintiffs had violated, were violating, or were about to violate the law." *Id.*

{¶64} Contrastingly, in *Frodge v. Newport*, 501 Fed.Appx. 519 (6th Circ.2012), the two plaintiffs, a male and a female, got involved in a road dispute with another vehicle. When the plaintiffs' vehicle came to a stop at a traffic light, one of the male passengers from the other vehicle, which was stopped behind the plaintiffs, got out, kicked the plaintiffs' car, and threatened the plaintiffs. The plaintiffs exited their vehicle and got into a physical altercation with the male individual. Two officers witnessed the fight between the three individuals and ran over to separate them. The officers placed both males under arrest. The male plaintiff explained to the officer that the other male had attacked him and had damaged their vehicle. One of the officers examined the vehicle and noticed damage, "but [later] testified that he did not know how it got there." *Id.* at 523. The female plaintiff was also trying to explain her side of the story — that the other male individual instigated the fight — while the male plaintiff was being arrested. Both plaintiffs were ultimately arrested and charged with disorderly conduct. They went to trial and were acquitted of their charges. The plaintiffs then filed suit against one of the officers for false arrest and malicious prosecution. The trial court granted the officer immunity, and the plaintiffs appealed.

{¶65} On appeal, the plaintiffs argued that "their assertion of the affirmative defense of self-defense should have precluded [the officer] from arresting them" and pointed out that the officer "did not ask them their side of the story and did not consider the damage to their car." *Id.* at 528. The Sixth Circuit found that the officer had probable cause to arrest the plaintiffs and recognized that the officer was "not aware of any affirmative defense of self-defense until after [the male plaintiff] had been arrested. Thus, this defense did not negate the finding of probable cause as to [the male plaintiff.]" As to the female plaintiff, the Sixth Circuit found that there was "no evidence that would have enabled [the officer] to 'conclusively know' that

Plaintiffs were protected by their claim of self-defense." *Id.* The court stated that the officer "only observed the fight *after* [the other male] had kicked the car. Though [the other officer] looked at the Mustang for damage and could see some damage to the car, he had no way of knowing whether this was caused by [the other male] as [the male plaintiff] had alleged." *Id.*

**{¶66}** The Sixth Circuit distinguished its previous holdings in *Dietrich* and *Gardenhire v. Schubert*, 205 F.3d 303 (6th Cir.2000), finding that "in those cases[,] the police officers were able to verify information, *prior to arrest*, that vitiated the officers' finding of probable cause, but proceeded to arrest the plaintiffs nonetheless." (Emphasis sic.) *Id.*[4] It said, "Here, [the officer] was unable to verify Plaintiffs' claims of self-defense prior to arrest. There was no evidence available to [the officer] to demonstrate that they had justifiably acted in self-defense." *Id.*

**{¶67}** In this case, Edvon argues that the officers lacked probable cause because they had conclusive evidence that he had an affirmative defense — defense of others. Defense of others is an affirmative defense to a charge of aggravated menacing. *See State v. Morefield*, 2d Dist. Montgomery No. 26155, 2015-Ohio-448, ¶ 26; *State v. Ludt*, 180 Ohio App.3d 672, 2009-Ohio-416, 906 N.E.2d 1182, ¶ 21 (7th Dist.).

---

[4] In *Gardenhire*, the plaintiffs filed a lawsuit against the police chief, claiming that he arrested them without probable cause. The lawsuit stemmed from an incident where the owner of a business next door to the plaintiffs' business accused the plaintiffs of theft, claiming that items in the plaintiffs' storefront window belonged to her. While the plaintiffs were arrested, no charges were brought against them. The trial court denied the police chief's summary judgment motion based on qualified immunity. On appeal, the Sixth Circuit found that

> there was evidence in addition to the [plaintiffs'] bare statements, that would lead a reasonable officer to rethink whether the [plaintiffs] had committed a crime. The obvious placement of the supposedly stolen goods and the common doorway between the shops should have triggered at least a suspicion that the "theft" was not what it appeared.

*Id.* at 316.

> The affirmative defense of defense of another is a variation of self-defense. *State v. Moss,* Franklin App. No. 05AP-610, 2006-Ohio-1647. Under certain circumstances, a person may be justified in using force to defend another person against an assault. However, the actor then stands in the shoes of the person he aids, and if the person aided is the one at fault in creating the affray, the actor is not justified in his use of force. *Id.* One who acts in defense of another must meet the criteria for self-defense. *Id.*

*State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 38.

**{¶68}** I would find *Dietrich* to be on point with the facts of this case and *Frodge* to be distinguishable. Here, like *Dietrich*, the officers had information available to them, *prior to arresting* Edvon, that conclusively established that Edvon only pointed a gun at the Moraleses to defend Regine against what he believed was an assault and that Regine would have been justified in using force because according to her, her father "grabbed" her and pushed her into the hallway and tried to prevent her from leaving the apartment. *See In re D.N.*, 195 Ohio App.3d 552, 2011-Ohio-5494, 960 N.E.2d 1063, ¶ 21 (8th Dist.) (holding that self-defense is an affirmative defense to domestic violence). Unlike *Frodge*, where the officers did not have statements from all of the parties involved, Edvon, Regine, and Alejandro all told the officers that Alejandro was fighting with Regine in the hallway immediately outside Edvon's door and that Regine screamed for help and for someone to call the police. They all admitted that the Moraleses and Edvon did not know one another. More importantly, all of the officers stated that there were "no discrepancies" between the statements from Edvon, Regine, and Alejandro.

**{¶69}** All of the above establishes that all of the officers — who compared the statements between Alejandro and Regine, went to Edvon's apartment, and made a "group decision" to charge Edvon for aggravated menacing — had full knowledge of facts and circumstances that conclusively established that Edvon was justified in pointing his gun at the Moraleses to defend Regine. As a result, the officers did not have probable cause to arrest Edvon for aggravated

menacing. Because an inference of malice may arise when a plaintiff demonstrates a lack of probable cause, I would find that there is a genuine issue of material fact as to whether the officers are immune from Edvon's malicious prosecution claim. *See Hill v. White*, 190 F.3d 427, 433 (6th Cir.1999) ("[T]he existence of malice may be inferred from the fact that a lawsuit was brought without probable cause."). In addition to malice, I would also find that the evidence construed in favor of Edvon shows there is a genuine issue of material fact as to whether the officers acted in bad faith or in a wanton or reckless manner.

{¶70} Finally, the majority states that because "the officers had information that Regine caused the incident * * * the defense-of-others defense might reasonably be unavailable." While it is undisputed that Regine admitted to the officers that she was attempting to leave the apartment, it was also conclusively established that Alejandro's assault was severe and that he threw Regine against the hallway wall multiple times and pulled Regine's hair and extremities. Alejandro's physical assault on his daughter was so violent that Regine began screaming for help and yelling that Alejandro was going to kill her. I disagree with the majority's suggestion that Regine would not be able to defend herself from such a violent assault simply because she was attempting to leave the apartment or that a parent can violently assault a child attempting to leave the home. At the very least, whether Regine was able to defend herself is an issue that certainly raises a number of factually dependent legal questions that I believe are inappropriate for us to resolve when reviewing motions for summary judgment.

{¶71} In conclusion, the majority's weighing of the evidence and credibility determinations are improper at this stage of the proceedings and run counter to long-standing summary judgment principles. Genuine issues of material fact as to whether the police officers

had probable cause to charge Edvon with child endangering and aggravated menacing exist and are obvious from the record. Therefore, I respectfully dissent.